UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
THOMAS J. CHAMBLISS, JR.,                                      :

        Plaintiff,                                     :        09 Civ. 7221 (GWG)

  -v.-                                                        :        OPINION AND ORDER

CORRECTION OFFICER ROSINI,                                     :

        Defendant.                                     :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Thomas J. Chambliss, Jr., proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging that Correction Officer Anthony Rosini used excessive force while Chambliss was a pre-trial detainee at the Westchester County Department of Correction ("WCDOC"). The parties have consented to this matter being decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Defendant has moved for summary judgment under Federal Rule of Civil Procedure 56. For the reasons stated below, defendant's motion is granted.

I.     BACKGROUND

    A.    Procedural History

      On August 17, 2009, Chambliss filed a complaint pursuant to 42 U.S.C. § 1983, naming Rosini, Correction Officers Zayas and Spinna, and Sergeant Paradiso as defendants. See Complaint, filed Aug. 17, 2009 (Docket # 2) ("Compl."). On January 13, 2010, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). See Notice of Motion, filed Jan. 13, 2010 (Docket # 11). On May 4, 2010, the Honorable P. Kevin Castel, to whom the case was then assigned, granted dismissal as to Zayas, Spinna, and Paradiso but denied the motion as to Rosini. See Chambliss v. Rosini, et al., 2010 WL 1838868, at *6 (S.D.N.Y. May 4, 2010).

Following discovery, Rosini filed his motion for summary judgment on November 30, 2010.  See Notice of Motion, filed Nov. 30, 2010 (Docket # 29) ("Notice"); "Memorandum of Law in Support of County Defendants' [sic] Motion for Summary Judgment," filed Nov. 30, 2010 (Docket # 30); County of Westchester's Rule 56.1 Statement, filed Nov. 30, 2010 (Docket # 31) ("Def. 56.1 Stat."); Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment, filed Nov. 30, 2010 (Docket # 32).  Plaintiff's opposition papers were received by defendant's counsel on or about March 18, 2011, who forwarded them to the Court for docketing.  See Response to Declaration in Support of Motion for Summary Judgement, dated Feb. 21, 2011 (Docket # 33) ("Chambliss Decl.").  Defendant's reply papers were filed on May 31, 2011.  See "County Defendants'[sic] Reply Memorandum of Law," filed May 31, 2011 (Docket # 27); Reply Declaration of Christie D'Alessio in Support of County Defendant's Motion for Summary Judgment, filed May 31, 2011 (Docket # 28).

  B.  Evidence Presented on the Summary Judgment Motion

    1.  Compliance with Local Rule 56.1

The documents filed by Chambliss in opposition to Rosini's summary judgment motion do not conform to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1").  Local Rule 56.1 provides that, "[t]he papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party," Local Rule 56.1(b), and each statement must be followed by a citation to admissible evidence, Local Rule 56.1(d).  "If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (citation omitted); accord Five Star Hotels, LLC v.

Ins. Co. of Greater N.Y., 2011 WL 1216022, at *1 n.1 (S.D.N.Y. Mar. 24, 2011); Carpiniello v. Hall, 2010 WL 987022, at *1 n.1 (S.D.N.Y. Mar. 17, 2010); Local Rule 56.1(c).

Here, Chambliss failed to submit such a statement. Nonetheless, he has submitted a sworn declaration that contains factual assertions bearing on this matter, see Chambliss Decl., and the defendants have placed Chambliss's deposition in the record, see Deposition of Thomas James Chambliss (annexed as Ex. E to Declaration in Support of Motion for Summary Judgment (attached to Notice) ("D'Alessio Decl.")) ("Chambliss Depo."). In light of plaintiff's pro se status, the Court will exercise its discretion to consider these materials. See Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("where a pro se plaintiff fails to submit a proper [opposing statement] . . . , the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions") (citations omitted); accord Diagne v. N.Y. Life Ins. Co., 2010 WL 5625829, at *1 (S.D.N.Y. Dec. 8, 2010), adopted by 2011 WL 204905 (S.D.N.Y. Jan. 21, 2011). However, the Court will deem admitted the portions of defendant's 56.1 statement that are not controverted by any other evidence in the record.

   2.  Facts

Except as otherwise noted, the following facts are based on Chambliss's version of the events, except where otherwise noted, as well as evidence submitted by defendant that has not been controverted by admissible evidence.

Rosini has been a correction officer at WCDOC since April 26, 2004. See Affidavit of Anthony Rosini (annexed as Ex. H to D'Alessio Decl.) ("Rosini Aff.") ¶ 1. In July 2009, Rosini "worked as a transport officer . . . during the 7:00am to 3:00pm shift." Rosini Aff. ¶ 3. For this position, Rosini was required to complete a course of training, including training on "inmate

restraint techniques" and "use of force." Id. ¶ 2; see Westchester County Department of Correction Post Order (annexed as Ex. Z to D'Alessio Decl.) at 1. "As a part of [Rosini's] duties as a transport officer, [Rosini was] responsible for the transport of inmates to and from the SHU . . . . " Rosini Aff. ¶ 7. The "SHU . . . is a segregated unit which provides a safe environment for those inmates that are violent toward staff and other inmates [that] pose a threat to others." Id. ¶ 4; see Westchester County Department of Correction Policy and Procedure (annexed as Ex. B to D'Alessio Decl.) at 1 ("It is the policy of [WCDOC] to provide a safe, secure and humane environment for those inmates that are violent towards staff or other inmates and pose a serious threat to others . . . .").

On July 10, 2009, Rosini "was notified [by] his supervisor that [Chambliss] was ready for transport from the visiting room to the SHU." Rosini Aff. ¶ 8. At the time, Chambliss had a reputation as being non-compliant and uncooperative during transport and lock-in. Id. ¶ 9; Affidavit of Jose Zayas (annexed as Ex. I to D'Alessio Decl.) ("Zayas Aff.") ¶ 8. Rosini, along with Zayas, "went to the visiting room where [they] met [Chambliss] . . . in order to transport him back to his cell in the SHU." Rosini Aff. ¶ 8; see Zayas Aff. ¶ 2. The officers placed Chambliss in "full restraints according to the WCDOC G-Block (SHU Inmate Movement Policy)," and proceeded to transport him back to his holding cell in the SHU. Rosini Aff. ¶¶ 9-10; see Zayas Aff. ¶¶ 5, 6. "During the transport, plaintiff carried one folder containing legal work in his hands." Zayas Aff. ¶ 3; see Rosini Aff. ¶ 10; DVD Copy of Video Taken at WCDOC on July 10, 2009 (annexed as Ex. F to D'Alessio Decl.) ("July 10 Video") at 12:35:18[1].

---

[1] Defendant has submitted copies of a number of videos taken of plaintiff while he was incarcerated at the WCDOC. Included in the submission is a copy of a video recording of the incident in question. See July 10 Video. Plaintiff concedes that these videos are "[fair] and accurate." Chambliss Decl. ¶ 3.

Upon arrival at Chambliss's cell, "Zayas entered [the cell] with [p]laintiff to unhook his waist chain," Rosini Aff. ¶ 11; see Zayas Aff. ¶ 4; July 10 Video at 12:35:17, while Rosini remained outside, see Rosini Aff. ¶ 12; Zayas Aff. ¶ 4; July 10 Video at 12:35:19-12:35:46. Chambliss placed his folder down while Zayas unhooked plaintiff's waist chain which was attached to his cuffs, wrapped around his waist and padlocked to the rear of his person. Rosini Aff. ¶ 12; Zayas Aff. ¶¶ 5-6. Rosini contends that he did not take hold of or pull on Chambliss's waist chain at this point, Rosini Aff. ¶ 12; see Zayas Aff. ¶ 6; July 10 Video at 12:35:21-12:36, though Chambliss contends that he went to put down his legal papers and that Rosini "then" began pulling on the chain. Compl. at 3; Chambliss Decl. ¶ 1 (affirming statements in the complaint). Zayas "exited [Chambliss's] cell and secured one end of the waist chain to the security ring outside of [the cell] pursuant to department procedure." Rosini Aff. ¶ 13; see Zayas Aff. ¶ 7; July 10 Video at 12:35:46-12:35:58. The other end of the waist chain remained attached to Chambliss's handcuffs. Rosini Aff. ¶ 13. Rosini held the waist chain for the first time after Zayas exited the cell. Id.; July 10 Video at 12:36.

   Following Zayas's exit, Rosini requested that "Officer Spina, the SHU control officer, close [Chambliss's] cell[,] which he did electronically. While the door was closing, [p]laintiff intentionally jammed [his] waist chain in the cell door." Rosini Aff. ¶ 14; see July 10 Video at 12:36:02-12:36:04; see generally Zayas Aff. ¶ 8 ("While [the] cell . . . door was closing, [p]laintiff was uncooperative."). Zayas and Rosini were able to "maneuver the waist chain back into the upper cuffing port so that the door could close fully and securely." Rosini Aff. ¶ 14; July 10 Video at 12:36:02. Rosini then ordered Chambliss "to turn around and put his back to

5

the closed cell door so that his shackles could be removed through the lower cuffing port."[2] Rosini Aff. ¶ 15; see Zayas Aff. ¶ 9. Chambliss refused to cooperate, "repeated 'I ain't getting unhooked, I ain't getting unhooked' in an excited manner," and "grabbed the waist chain that was attached to his handcuffs with both hands." Rosini Aff. ¶ 16; see Zayas Aff. ¶ 10. Officer Zayas "shut the lower access cuffing port with his foot. Zayas Aff. ¶ 10; July 10 Video at 12:36:16. Rosini gave Chambliss a second direct order, which he again refused and then began to pull on his waist chain. Rosini Aff. ¶ 17. "As [Chambliss] pulled the slack of the waist chain in[to] his cell it caused [Rosini] to go off balance toward the cell door . . . . [Rosini] held onto the waist chain to prevent [p]laintiff from further pulling excess into his cell."[3] Id. Rosini contends that "[i]n order to prevent [p]laintiff from gaining more access to the chain and to restore discipline, [Rosini] pulled 'the chain back out toward [him].'" Rosini Aff. ¶ 18; see July 10 Video at 12:36:17-12:36:22. Chambliss contends that rather than "pull[ing]" the chain back, Rosini "violently yanked and pulled at the iron chain causing [his] hand to hit the door and causing bones to disform [sic]." Compl. at 3; see Chambliss Decl. ¶ 1 (affirming statements in the complaint); see also Chambliss Depo. at 45 (Rosini "yank[ed]" the chain "probably like four times"). After the chain was pulled, "Rosini place[d] the chain in the upper groove of the upper cuffing port and . . . Zayas close[d] the port." Def. 56.1 Stat. ¶ 54 (citing July 10 Video at 12:36:16-12:36:24).

---

[2] "Pursuant to WCDOC policy, the leg shackles are removed first and the hand shackles are later removed through the upper port for safety and security purposes." Rosini Aff. ¶ 15.

[3] The video does not clearly reflect Rosini going "off balance." See July 10 Video at 12:36:19.

Though plaintiff was now secured in his cell, WCDOC policy required that he be unshackled by a supervisor or the "Emergency Response Team" ("ERT") because he had disobeyed Rosini's orders.  Rosini Aff. ¶ 23.  Rosini and Zayas left Chambliss shackled in his cell and advised their supervisor, Sergeant Paradiso, that Chambliss was refusing to be unshackled and "that the [ERT] may have to be called in order to remove [Chambliss's] restraints."  Id. ¶ 24; see Zayas Aff. ¶ 13.  Sometime after Rosini and Zayas left, Chambliss began to "wildly pull on the chains[,] so violently that the excess chain outside his cell . . . was flailing up and down.  In fact, even though the chain was secured by the closed cuffing port, [Chambliss] managed to pull several links of the chain back in his cell."  Rosini Aff. ¶ 25; see July 10 Video at 12:37:36-12:38:39.  In addition, Chambliss was "cursing, screaming and banging on his cell door."  Rosini Aff. ¶ 25.  Some short time thereafter, Officer Spina and Paradiso met with Chambliss and got him to cooperate so that they could remove his hand shackles and leg irons, which finally occurred within a few minutes of the incident.  Rosini Aff. ¶ 26; Zayas Aff. ¶ 13; July 10 Video at 12:39-12:45.

Sometime that same day, Rosini "drafted a disciplinary report against [p]laintiff charging him with disorderly conduct; tampering with or blocking any locking device or security equipment; and disobedience of orders."  Rosini Aff. ¶ 27.  On July 15, 2009, plaintiff was found guilty of all charges and sentenced to 184 days of "keep lock."  Id.  Rosini was "never verbally or formally disciplined in connection with the July 10, 2009 incident."  Id. ¶ 28.

Chambliss claims that as a result of the July 10, 2009 incident, his hand was deformed and the bones in his wrist were sticking out.  Chambliss Depo. at 14.  Medical records reflect, however, that Chambliss's hand was "deformed" prior to the July 10, 2009 incident, see Medical Records (annexed as Ex. C to D'Alessio Decl. and Ex. A to Chambliss Decl. ) ("Medical

7

Records") at 00012 (noting "deformity" on plaintiff's right hand), 00015 (same), 00016 (noting hand injury and "deformity" from 2007), and that he had made numerous complaints regarding his right hand throughout the course of his incarceration at WCDOC, Chambliss Decl. ¶ 1 ("I have been complaining the whole time I have been [at WCDOC] about my hand, and asking to get surgery the entire time I've been in Westchester County Jail."); see Chambliss Depo. at 15, 23.  Chambliss, who originally broke his hand in September 2007 when he punched a wall at his home, Chambliss Depo. at 18-19, was scheduled to have surgery on his hand in December 2007 while he was incarcerated at WCDOC for a parole violation, see Letter to Dr. G. Bailey Dated Nov. 20, 2009 (annexed as Ex. Q to D'Alessio Decl.) ("Letter to G. Bailey"); Chambliss Depo. at 20-22.  However, Chambliss's surgery was rescheduled due to a conflict with a court appearance, and he was released from jail on January 9, 2008, before undergoing surgery.  Letter to G. Bailey.

On January 16, 2008, Chambliss returned to WCDOC.  See id.  Upon arrival, Chambliss told WCDOC officials that his hand was "dislocated."  Intake History and Physical (annexed as Ex. R to D'Alessio Decl.) (noting plaintiff's right hand injury).  On March 4, 2008, plaintiff had an x-ray on his hand.  See Westchester Medical Center Radiology Reports (annexed as Ex. S to D'Alessio Decl.) ("Mar. 4. Radiology Report").  At the time, the x-ray showed the following:

> There is again seen [a] dorsal dislocation of the fifth metacarpal bone and osseous fragment at the base of [the] fifth metacarpal bone and healing fracture of fourth metacarpal bone with suspected intra-articular component and no change in alignment.  The fourth metacarpal bone may also be dorsally subluxed or dislocated.

Mar. 4 Radiology Report.

Immediately following the July 10, 2009 incident, Chambliss complained to Paradiso about pain in his right wrist.  Compl. at 3; see Chambliss Decl. ¶ 1 (affirming statements in the

complaint).  Chambliss was examined by Sandy M. George, a nurse practitioner at WCDOC.  Medical Records at 00011.  At the time, George noted that Chambliss has "swelling over dorsal surface" and "decreased ROM at wrist."  Id.  George prescribed 400mg of Motrin and an ace bandage wrap and ordered a wrist x-ray.  Id.  An x-ray of Chambliss's wrist was taken on July 13, 2010, which showed "no acute changes" since Chambliss's March 4, 2008 x-ray.  Id. at 0009 (result of July 13, 2009 x-ray showing "same" results as seen in plaintiff's March 4, 2008 x-ray).  After the July 13, 2009 x-ray, Chambliss continued to complain about pain in his wrist.  See id. at 0007, 0008 (Chambliss complained about his right wrist and stated that "he [was] unable to make a fist," and that he was experiencing "deep pain").[4]

While defendant contends that plaintiff did not file a grievance and therefore did not properly exhaust his claim, see Def. 56.1 Stat. ¶¶ 42-45, Chambliss asserts that on July 10, 2009, he gave a grievance to Sergeant Holder who subsequently told him that "he put [plaintiff's grievance] on a clip board in the T.A.C. room and it was lost."  Chambliss Decl. ¶ 4.  Holder denies this.  Affidavit of Alfredo Holder (annexed as Ex. P to D'Alessio Decl.) ¶¶ 8-12.

---

[4] Video evidence submitted by defendant depicts plaintiff making a fist and various other movements with his right hand shortly after meeting with medical staff.  See DVD Copy of Video Taken at WCDOC on July 22, 2009 Video (annexed as Ex. F to D'Alessio Decl.) at 10:52-10:53:26 (plaintiff unwraps right hand, moves it and makes a fist), 11:21-11:21:04 (plaintiff uses injured hand to untwist canister of deodorant); DVD Copy of Video Taken at WCDOC on July 23 Video (annexed as Ex. F to D'Alessio Decl.) at 10:08-10:11:47 (plaintiff manipulates hand while scratching his face and knocking on cell door).  In addition, on July 30, 2009, a day after he complained to medical staff of extreme pain, plaintiff is seen doing multiple push-ups and pull-ups, and placing weight on his injured hand.  See DVD Copy of Video Taken at WCDOC on July 30, 2009 Video (annexed as Ex. F to D'Alessio Decl.) ("July 30 Video") at 13:37:10-13:40:40.

II.     LAW GOVERNING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (additional citation omitted) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a

genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48). The same rules apply to a pro se litigant. See, e.g., Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion[, the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (internal quotation marks and citations omitted).

III.   DISCUSSION

While defendants contend that Chambliss has not properly exhausted his excessive force claim and thus the action is barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e, we do not reach this issue because plaintiff's claim fails on the merits.

To state a claim under § 1983, Chambliss must show that he was denied a constitutional or federal statutory right and that the deprivation of such right occurred under color of state law. See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 47-48 (1988). Section 1983 does not grant any substantive rights but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or federal statutes. Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240 (1994). Here, Chambliss claims that his Fourteenth Amendment Due Process right was violated by Rosini's use of excessive force. A court considers a claim of excessive force by a pretrial detainee under the same standards that govern a claim, under the Eighth Amendment, to be free from cruel and unusual punishment. See United States v. Walsh, 194 F.3d 37, 47-48 (2d Cir. 1992); accord Adilovic v. Cnty. of Westchester, 2011 WL 2893101, at *4 (S.D.N.Y. July 14, 2011); Johnson v.

City of New York, 2011 WL 1044852, at *3 (S.D.N.Y. Mar. 18, 2011); Houston v. Horn, 2010 WL 1948612, at *11 (S.D.N.Y. May 13, 2010) (citing Walsh, 194 F.3d at 48).

While the use of excessive force is prohibited by the Eighth Amendment, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). To establish a claim under the Eighth Amendment for excessive force, a plaintiff must satisfy both an objective and subjective element. See Hudson, 503 U.S. at 7-10; accord Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009); Walsh, 194 F.3d at 49-50; Engles v. Dunbar, 2010 WL 5538517, at *6 (S.D.N.Y. Dec. 30, 2010); Pearson v. Cantor, 2010 WL 3420532, at *3 (E.D.N.Y. Aug. 26, 2010). "Thus, courts considering a [pre-trial detainee's] claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson, 503 U.S. at 8 (citations omitted). "Where a plaintiff fails to satisfy either of these prongs, the defendant is entitled to summary judgment." Johnson, 2011 WL 1044852, at *4 (citing Cunningham v. Rodriguez, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002)).

The objective prong "focuses on the harm done, in light of contemporary standards of decency. In assessing this component, the court must ask whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Wright, 554 F.3d at 269 (citations and internal quotation marks omitted). "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 130 S. Ct. at 1178 (citations and

internal quotation marks omitted).  A prison official's malicious or sadistic use of force, however, always violates contemporary standards of decency.  Wright, 554 F.3d at 269.  "This is true whether or not significant injury is evident."  Id. (quoting Hudson, 503 U.S. at 9).  While not dispositive, the extent of a plaintiff's injury is "relevant to a determination of whether force was 'sufficiently serious by objective standards.'"  Ninortey v. Shova, 2008 WL 4067107, at *10 (S.D.N.Y. Sept. 2, 2008) (quoting Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999)) (other citation omitted).

"The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct."  Wright, 554 F.3d at 268 (citations and internal quotation marks omitted).  The crucial question in this respect is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins, 130 S. Ct. at 1178 (citation and internal quotation marks omitted); accord Wright, 554 F.3d at 268; Pearson, 2010 WL 3420532, at *3.  In assessing the subjective prong, courts focus on the following factors: "(1) the need for the application of force, (2) the threat reasonably perceived by the responsible officials, (3) the relationship between the need and the amount of force used, and (4) any efforts made to temper the severity of a forceful response."  Sidney v. Wilson, 2007 WL 4208626, at *4 (S.D.N.Y. Nov. 21, 2007) (citations omitted).  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."  Wilkins, 130 S. Ct. at 1178 (citations omitted).

Chambliss has not provided evidence that would allow a jury to find in his favor on either prong of his excessive force claim. With respect to the objective element, Chambliss has failed to demonstrate that Rosini's conduct caused harm of sufficient magnitude to reflect a constitutional violation. The Court recognizes that Chambliss contends that Rosini "violently yanked" the waist chain attached to his hand restraints, see Compl. at 3; Chambliss Decl. ¶ 1 (affirming statements in the complaint). But the video of the incident, which Chambliss concedes is "accurate," Chambliss Decl. ¶ 3, shows Rosini steadily pulling the chain after the excess of the chain had been pulled through the upper port. July 10 Video at 12:36:17-12:36:24. Nothing in the video could be characterized as a "violent[] yank[]," let alone "four" such yanks, as Chambliss contended at his deposition, see Chambliss Depo. at 45. We accept the video evidence as dispositive of the degree of force that Rosini exerted on the chain. See, e.g., Scott v. Harris, 550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); accord Gardine v. Maxwell, 2010 WL 808995, at *5 (S.D.N.Y. Mar. 9, 2010) ("Summary judgment may be granted when a plaintiff's testimony is largely unsubstantiated by direct evidence and is replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the plaintiff's allegations.") (citing Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Furthermore, there is no indication from the record that plaintiff sustained a serious injury as a result of this incident. While plaintiff contends that Rosini's conduct caused an injury to his right hand and wrist, Compl. at 3; Chambliss Decl. ¶ 1 (affirming statements in the complaint), Chambliss concedes that his hand and wrist were injured prior to the incident and

14

that he had been complaining about his hand/wrist injury throughout the course of his confinement in the WCDOC, Chambliss Decl. ¶ 1.  In addition, the uncontroverted evidence shows that Chambliss's existing wrist and hand injury was not seriously aggravated by Rosini's conduct.  See Medical Records at 0009 (result of July 13, 2009 x-ray showing same results as seen in plaintiff's March 4, 2008 x-ray); July 10 Video at 12:37:36-12:38:39 (minutes after the incident Chambliss is seen pulling on his waist chain and banging on his cell door); July 30 Video at 13:37:10-13:40:40 (20 days after incident plaintiff is observed doing push-ups, pull-ups, and placing weight on his right hand).  At most, the record establishes that Chambliss was subjected to a de minimis amount of force as a result of which he suffered no discernible injury.  Accordingly, he has failed to satisfy the objective element of his excessive force claim.  See Wilkins, 130 S. Ct. at 1178 ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

     His excessive force claim fails also because he has failed to establish the subjective prong of his claim.  The record is entirely devoid of any evidence that tends to show that Rosini's conduct was in anyway malicious or sadistic.  To the contrary, the uncontroverted evidence submitted by Rosini reflects that the force exerted upon plaintiff was applied in a good-faith effort by Rosini to maintain or restore discipline following Chambliss's extremely disruptive behavior.  The evidence submitted by Rosini establishes that on July 10, 2009, plaintiff, who had a "history of being non-compliant during transport and lock in," Rosini Aff. ¶ 9; see Zayas Aff. ¶ 8, was uncooperative, Zayas Aff. ¶ 8; see Rosini Aff. ¶¶ 14-20; failed to heed Rosini's orders, Rosini Aff. ¶¶ 15-17; see Zayas Aff. ¶¶ 9-10; tried to prevent Zayas and Rosini from closing his cell door, Rosini Aff. ¶ 14; see Zayas Aff. ¶ 8; and purposefully pulled his waist chain through the upper port of his cell door, Zayas Aff. ¶ 11; see Rosini Aff. ¶ 17.

15

The force was exerted by Rosini "[i]n order to prevent [p]laintiff from gaining more access to the chain," "to restore discipline," "to take control of the situation," and to prevent plaintiff from using the excess chain as a weapon. Rosini Aff. ¶¶ 18-19; Zayas Aff. ¶ 11. Chambliss has failed to present any evidence that contradicts Rosini's account of events. Because Chambliss has not submitted any proof that tends to show that the alleged force used against him was employed maliciously and sadistically to cause harm, he has failed to satisfy the subjective prong of his excessive force claim. See Engles, 2010 WL 5538517, at *7 (subjective component of excessive force test not satisfied where uncontroverted evidence established that force was used not maliciously or sadistically, but instead to transport plaintiff in order to receive medical attention); Houston, 2010 WL 1948612, at *12 (plaintiff failed to satisfy subjective element of excessive force claim where he failed to submit proof that contradicted evidence that force was only used to restore discipline after plaintiff failed to comply with an officer's order). Notably, given Chambliss's history of wrist problems, it appears that any pain Chambliss claims to experienced from the chain-pulling was due to the exacerbation it caused of the existing wrist problems. There is no evidence, however, that Rosini was aware of Chambliss's previous wrist injury, or that pulling the chain would exacerbate it. In other words, a jury could not rationally find that Rosini was aware that the degree of force he exerted to pull the chain would have caused Chambliss a sufficient degree of pain to constitute cruel and unusual punishment.

IV.     CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Docket # 29) is granted. The Clerk is requested to enter judgment dismissing the complaint.

Dated: September 2, 2011
       New York, New York

16

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies to :

Thomas James Chambliss, Jr.
85143-054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

Christie L. D'Allessio
Assistant County Attorney
Michaelian Office Builiding
148 Martine Avenue, 6th Floor
White Plains, NY 10601